No. 22-60639

# In the United States Court of Appeals for the Fifth Circuit

---

AMERICAN HOME FURNISHINGS ALLIANCE,
MISSISSIPPI ECONOMIC COUNCIL, AND
MISSISSIPPI MANUFACTURERS ASSOCIATION
PETITIONERS,

*v.*

UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION,
RESPONDENT.

---

*ON PETITION FOR REVIEW OF A FINAL RULE OF THE UNITED STATES
CONSUMER PRODUCT SAFETY COMMISSION*

---

**OPPOSED EMERGENCY MOTION FOR A STAY PENDING REVIEW
AND FOR EXPEDITED CONSIDERATION**

---

SARAH M. HARRIS
WHITNEY D. HERMANDORFER*
MARK S. STORSLEE
CLAYTON P. PHILLIPS
WILLIAMS & CONNOLLY LLP
 680 Maine Avenue SW
 Washington, DC 20024
 (202) 434-5000
 whermandorfer@wc.com
Counsel for Petitioners
*Counsel of Record.

No. 22-60639

AMERICAN HOME FURNISHINGS ALLIANCE,
MISSISSIPPI ECONOMIC COUNCIL, AND
MISSISSIPPI MANUFACTURERS ASSOCIATION
PETITIONERS,

*v.*

UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION,
RESPONDENT.

_____

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rules 27.4 and 28.2.1, the undersigned counsel of record represents that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Undersigned counsel further represents that no publicly held corporation owns more than 10% of any party to this case.

1. PETITIONERS: American Home Furnishings Alliance, Mississippi Economic Council, and Mississippi Manufacturers Association

    Sarah M. Harris
    Whitney D. Hermandorfer
    Mark S. Storslee
    Clayton P. Phillips
    Williams & Connolly, L.L.P.
       680 Maine Avenue SW
       Washington, DC 20024
       (202) 434-5000

2. RESPONDENT:    United States Consumer Product Safety Commission

> Alberta E. Mills
> United States Consumer Product Safety Commission
> Secretary
>> 4330 East West Highway
>> Bethesda, MD 20814

> Merrick B. Garland
> United States Department of Justice
> Attorney General
>> 950 Pennsylvania Avenue NW
>> Washington, DC 20530

> Mark R. Freeman
> United States Department of Justice
> Civil Division, Appellate Section
>> 950 Pennsylvania Avenue NW
>> Washington, DC 20530

> Courtney L. Dixon
> United States Department of Justice
> Civil Division, Appellate Section
>> 950 Pennsylvania Avenue NW
>> Washington, DC 20530

> Mark B. Stern
> United States Department of Justice
> Civil Division, Appellate Section
>> 950 Pennsylvania Avenue NW
>> Washington, DC 20530

3. INTERESTED NON-PARTIES:  Manufacturers, importers, retail sellers, and consumers of clothing-storage units, including members of petitioners.

*/s/ Whitney D. Hermandorfer*

*Attorney for Petitioners*

# **TABLE OF CONTENTS**

Page

INTRODUCTION..................................................................................................1

BACKGROUND...................................................................................................4

    A.    The Consumer Product Safety Act.................................................4

    B.    Safety Regulation of Clothing-Storage Units................................6

    C.    CPSC's Proposed Rule ....................................................................8

    D.    CPSC's Final Rule .........................................................................11

LEGAL STANDARD ........................................................................................12

ARGUMENT ......................................................................................................13

I.     Petitioners Are Likely to Succeed on the Merits .................................13

    A.    The Rule Is Void Because the CPSC Is Unconstitutionally
          Structured ......................................................................................13

    B.    The Rule Violates the CPSA.........................................................14

          1.    The Rule's Requirements Are Not Reasonably
                Necessary to Address Relevant Risks ................................15

          2.    The Rule Impermissibly Disregards the Less-
                Burdensome ASTM Standards ............................................18

          3.    The Rule's Benefits Do Not Reasonably Relate to Its
                Massive Costs to Industry and Consumers........................20

    C.    The Rule Violates the APA ...........................................................23

          1.    The Rule Is Arbitrary and Capricious ...............................23

          2.    The Rule Is Procedurally Invalid .......................................24

II.    Petitioners Face Irreparable Harm Absent a Stay ...............................25

III.   A Stay Will Not Harm CPSC and Serves the Public Interest..............27

IV.   At a Minimum, Expedited Consideration Is Warranted .......................28

CONCLUSION...................................................................................................28

i

# TABLE OF AUTHORITIES

Page

## CASES

*Aqua Slide 'N' Dive Corp. v. CPSC*, 569 F.2d 831 (5th Cir. 1978) .......... *passim*

*BST Holdings, LLC v. OSHA*, 17 F.4th 604 (5th Cir. 2021) .............................13

*Chem. Mfrs. Ass'n v. EPA*, 870 F.2d 177 (5th Cir. 1989) (per curiam) ...........25

*Collins v. Yellen*, 141 S. Ct. 1761 (2021) ...............................................................13

*Consumers' Rsch. v. CPSC*, 592 F. Supp. 3d 568 (E.D. Tex. 2022).................14

*FCC v. Prometheus Radio Project*, 141 S. Ct. 1150 (2021) ...............................23

*Free Enter. Fund v. PCAOB*, 561 U.S. 477 (2010)............................................14

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)...........................................................................................23

*Nat'l Fed'n of Indep. Bus. v. OSHA*, 142 S. Ct. 661 (2022) (per curiam)........27

*Southland Mower Co. v. CPSC*, 619 F.2d 499 (5th Cir. 1980) ...................15, 20

*Tex. Ass'n of Mfrs. v. CPSC*, 989 F.3d 368 (5th Cir. 2021)...............................24

*Texas v. Biden*, 10 F.4th 538 (5th Cir. 2021) (per curiam)................................27

*Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016) ......................................................26

*Wages & White Lion Invs., LLC v. FDA*,
    16 F.4th 1130 (5th Cir. 2021) ...................................................................26, 27

*Zen Magnets, LLC v. CPSC*, 841 F.3d 1141 (10th Cir. 2016) .................. *passim*

## CONSTITUTION, STATUTES, REGULATIONS, AND RULES

U.S. Constitution article II ...................................................................................13

ii

Page

Constitution, Statutes, Regulations, and Rules—continued:

5 U.S.C.
  § 553 ...................................................................................24
  § 705 ...................................................................................12

15 U.S.C.
  §§ 2051-2090 .....................................................................2, 4
  § 2053 ...............................................................................4, 13
  § 2056 ......................................................................................5
  § 2058 ...............................................................................*passim*
  § 2060 ...............................................................................*passim*
  § 2064 ......................................................................................5
  § 2069 ......................................................................................5
  § 2070 ......................................................................................5

Administrative Procedure Act, Pub. L. No. 79-404, 60 Stat. 237 (1946)
  (codified at 5 U.S.C. § 500 *et seq.*) ...................................3, 13, 14, 23

Consumer Product Safety Act, Pub. L. No. 92-573, 86 Stat. 1207 (1972)
  (codified at 15 U.S.C. § 2051 *et seq.*) .........................................*passim*

STURDY Act, S. 3232, 117th Cong., §2(c) (2022) .........................................7, 8

82 Fed. Reg. 56,752 (Nov. 30, 2017) ................................................................8

87 Fed. Reg. 6246 (Feb. 3, 2022) ..................................................................8
  6248 ....................................................................................24
  6251 ....................................................................................16
  6272 ....................................................................................16
  6275 ......................................................................................8
  6276 ......................................................................................8
  6282 ......................................................................................9
  6283 ...................................................................................9, 17
  6289 ...................................................................................8, 9
  6290 ......................................................................................9

Page

Constitution, Statutes, Regulations, and Rules—continued:

Federal Rules of Appellate Procedure

2.................................................................................................28
17...............................................................................................28
18...........................................................................................1, 26
27...........................................................................................1, 28

Fifth Circuit Rule 27.5.............................................................28

## OTHER AUTHORITIES

Comments to Proposed Rule,
    https://tinyurl.com/2sxhpm73............................................6, 10, 26

*Commission Meeting: Decisional Matter* (Oct. 19, 2022),
    https://tinyurl.com/437fztre ................................................24

CPSC Staff, Final Rule Briefing Package,
    https://tinyurl.com/2p99sf5p................................................*passim*

CPSC Staff, Proposed Rule Briefing Package,
    https://tinyurl.com/4dvvs7p ................................................*passim*

Ikea Ltr. to CPSC (Oct. 19, 2022), https://tinyurl.com/2xcb2v3n ...................22

RILA Ltr. to CPSC (Oct. 22, 2022), https://tinyurl.com/3cr39vbz...................26

Statement of Commissioner Peter A. Feldman Expressing Concerns
    About Legal Foundation of Final Agency Action on CSU Rule
    (Oct. 19, 2022) ...........................................................12, 24

## INTRODUCTION

Pursuant to Federal Rules of Appellate Procedure 18 and 27, petitioners American Home Furnishings Alliance (AHFA), Mississippi Economic Council, and Mississippi Manufacturers Association respectfully request an emergency stay pending this Court's resolution of their December 5, 2022 petition for review, as well as expedited consideration. Respondent, the U.S. Consumer Product Safety Commission (CPSC), has indicated its opposition to a stay but consents to expedited consideration. Petitioners respectfully request a ruling as soon as practicable.

This is a clear case for pausing a staggeringly broad CPSC rule with "obvious legal vulnerabilities," as one commissioner put it. On November 25, CPSC issued a Final Rule that will *outlaw* the manufacturing of nearly every model of clothing-storage furniture as of May 2023. Every year, Americans buy over 20 million of these items, including dressers, chests, armoires, and other pieces. Those sales sustain a $7 billion industry, largely comprised of small businesses represented by organizations like petitioners. All but a tiny fraction of furniture units are safely used, thanks to industry's successful collaboration with consumer groups and CPSC to strengthen voluntary safety standards.

Under the Rule, however, these businesses must redesign tens of millions of furniture items within months to satisfy CPSC's novel criteria for preventing tip-overs, which happen when people climb on or pull over furniture not properly anchored to walls. CPSC's furniture-design criteria are so onerous that countless manufacturers will go out of business, and countless consumers already grappling with inflation may be unable to afford new furniture. On top of all that, the Rule thumbs its nose at pending legislation that would direct CPSC to consider adopting a new voluntary standard that the furniture industry, consumer groups, and parents support. The Senate unanimously passed that bill, and the House is currently considering it—yet CPSC rushed ahead with its sweeping mandatory rule instead.

A stay of this revolutionary rule is warranted. Start with petitioners' clear likelihood of success on the merits. The CPSC's unconstitutional structure—in which an agency with economy-wide powers lacks direct accountability to the President—precludes the agency from validly promulgating this Rule. The Rule is further invalid because it defies several provisions of the Consumer Product Safety Act (CPSA), *see* 15 U.S.C. §§ 2051-2090. CPSC failed to identify real, not speculative risk. Nor did CPSC use the

least-burdensome means for addressing risk: CPSC's stability test, product definition, "hangtag" labels with compelled disclosures, and effective date are far more onerous than reasonably necessary to address tip-over harm. The CPSA also bars CPSC from overriding effective voluntary industry standards—exactly what CPSC did here. Finally, the CPSA limits CPSC to issuing safety rules only if the cost-benefit breakdowns are reasonable; the Rule's is not. Separately, the Rule fails due to process fouls under the Administrative Procedure Act (APA), including failing to disclose key underlying data and promulgating a Final Rule riddled with new data, justifications, and requirements that CPSC never exposed to the rigors of the notice-and-comment process.

The Rule also imposes irreparable harm in spades. CPSC acknowledges that the Rule will ban nearly every existing covered furniture model, forcing petitioners' members to immediately undertake herculean efforts to redesign, rebuild, retest, and redistribute tens of millions of products within mere months. And these massive costs are unrecoverable, because CPSC enjoys sovereign immunity. The Rule will also inflict severe, irremediable intangible harms, like loss of innovation and consumer goodwill.

3

Conversely, a stay would not harm CPSC, whose staff acknowledged that postponing the Rule for months would not meaningfully affect the Rule's benefits. And the public interest favors requiring CPSC to abide by basic legal limits before fundamentally altering a $7 billion market—especially when Congress is actively considering a fundamentally different approach. The Rule also defeats CPSC's stated public-safety goal by forcing safe, low-cost products off the market, rendering new models unaffordable, and misleading the public about products' safety.

## BACKGROUND

### A.     The Consumer Product Safety Act

1.     Congress passed the Consumer Product Safety Act to safeguard against unreasonable risks of injury associated with consumer products. *See* 15 U.S.C. §§ 2051-2090. Congress vested the Act's enforcement in CPSC, a five-member independent agency whose commissioners can only be removed for cause. *Id.* § 2053(a). Since October 2022, there has been one vacant commissioner seat.

CPSC may promulgate "consumer product safety standards"— requirements that products satisfy certain safety standards or bear labels

warning consumers of safety risks. *Id.* §§ 2056(a), 2058. Violators risk product recalls and substantial civil and criminal penalties. *Id.* §§ 2064, 2069-2070.

Before promulgating final rules, CPSC must clear a series of public-comment hurdles and issue required findings. *Id.* § 2058(a)-(c). The Act likewise substantively constrains CPSC's rulemaking authority:

- Reasonably necessary: Each of the rule's commands, "including its effective date," "shall be reasonably necessary to prevent or reduce an unreasonable risk of injury associated with" a covered product. *Id.* §§ 2058(f)(3)(A), 2056(a).

- No effective voluntary standards: The rule cannot supplant industry's voluntary safety standard unless (i) compliance with the standard "is not likely to result in the elimination or adequate reduction" of risk or (ii) it is "unlikely that there will be substantial compliance" with the standard. *Id.* § 2058(f)(3)(D).

- Benefits approximate costs: The rule's expected benefits must "bear a reasonable relationship to its costs." *Id.* § 2058(f)(3)(E).

- Least-burdensome requirement: The rule must "impose[] the least burdensome requirement which prevents or adequately reduces" the relevant injury risk. *Id.* § 2058(f)(3)(F). CPSC also must consider how to "minimiz[e] adverse effects on … manufacturing." *Id.* § 2058(f)(1)(D).

CPSC must include findings on each of these requirements in the rule, *id.* § 2058(f), supported with "substantial evidence on the record taken as a whole," *id.* § 2060(c).

## B.     Safety Regulation of Clothing-Storage Units

Furniture like dressers, chests, and wardrobes for storing clothes are ubiquitous in American homes.  By CPSC's estimate, some 230 million of these "CSUs" are currently in use; sales total $7 billion annually.  A3.  This furniture varies widely in size, weight, and material across 6,000+ models.  A3.  Prices vary widely too.  Lighter-weight, ready-to-assemble units retail for around $100; solid-wood products can cost thousands.  A3.  More than 97% of industry participants are small businesses.  Small Bus. Ass'n cmt. 4.[1]

Most consumers use clothing-storage furniture without incident.  But sometimes, these products can present a risk of "tip-over"—falling over onto individuals.  Most often, tip-over happens when children climb onto a unit that is not secured to the wall with an anchoring device, prompting the unit—or televisions on top of units—to fall and seriously injure them.

CPSC and industry have long collaborated to mitigate tip-over risk, including through promoting voluntary clothing-storage-unit stability standards.  The principal standard, known as F2057 and promulgated by the American Society for Testing Materials (ASTM), specifies that units should (i)

---

[1] Comments to the Proposed Rule are at https://tinyurl.com/2sxhpm73.

pass two separate tests of stability using weights of up to 50 pounds, and (ii) be sold with wall-anchoring products and a label warning of tip-over risk. CPSC Staff, Proposed Rule Briefing Package (PRP) at 270-71.[2]

In CPSC's own estimation, these voluntary efforts have succeeded, producing a "statistically significant linear decline" in tip-over incidents over the past decade.  A4 n.26.  Total reported tip-over incidents fell by over 50% from 2010 to 2019.  A92.  Most recent tip-over-related harms trace to a single company whose units typically flunked the F2057 standard.  A91.

Recently, ASTM's furniture-safety subcommittee voted to again strengthen F2057.  A208-09.  Units would need to pass three separate pass/fail performance tests that simulated clothing-filled drawers, used a test weight of 60 rather than 50 pounds, and simulated carpet.  A96-97, A208.  CPSC Staff, Final Rule Briefing Package (FRP) at 173.[3]  Petitioners have strenuously supported these efforts.

Alongside this effort, industry has worked with parents and consumer groups to champion the STURDY Act.  That legislation would require CPSC

---

[2] The PRP is at https://tinyurl.com/4dvvs7p.
[3] The FRP is at https://tinyurl.com/2p99sf5p.

to consider adopting the revised F2057 standard as a mandatory consumer-product-safety rule. S. 3232, 117th Cong. § 2(c) (2022). The Senate passed STURDY unanimously in September 2022; the bill awaits a House vote.

### C.     CPSC's Proposed Rule

1.     In 2017, CPSC announced plans to finalize a clothing-storage-unit safety standard. 82 Fed. Reg. 56,752 (Nov. 30, 2017). Four years later, CPSC proposed a rule—accompanied by a CPSC-staff-compiled "briefing package"—that would affect every manufacturer, importer, distributor, and retailer of covered units. 87 Fed. Reg. 6246 (Feb. 3, 2022).

*First*, CPSC proposed new stability-testing requirements applicable to all covered units. Unlike ASTM F2057 testing methods, which generate a pass (no tip-over) or fail (tip-over) finding, CPSC's tests would produce "stability ratings" reflecting complex calculations of force applied at the precise "tip-over moment." *Id.* at 6275-76. To generate the minimum-ratings requirements, CPSC relied on a study involving children pulling, jumping, and bouncing on an apparatus with bars and handholds. PRP at 848-54.

CPSC acknowledged that its requirements would ban virtually every existing model. 87 Fed. Reg. at 6289. And while CPSC theorized that

8

businesses might comply by adding a simple interlock device costing $5.80 per unit, the models CPSC tested generally required modifications two-to-five-times costlier. *Id.* at 6289-90; PRP at 371.

*Second*, CPSC proposed requiring hangtag labels plotting each unit's stability rating on a 0-to-5 "linear scale graph[]" and rounded to the nearest decimal. 87 Fed. Reg. at 6282-83. CPSC acknowledged its prior warnings study where consumers "expressed confusion with decimals." *Id.* at 6283. Yet CPSC did not test the hangtag disclosures for clarity or effectiveness.

CPSC staff proposed a 180-day compliance period, noting even that date "could be challenging for many firms to meet." PRP at 371. Yet the commissioners voted to shorten that period to 30 days.

2.    Industry representatives urged CPSC to reconsider discarding the voluntary ASTM standard. Commenters noted the statistically significant decline in injuries since F2057's modification in 2014 and the tiny number of recent tip-over incidents CPSC attributed to ASTM-compliant units. A91-95. And both industry and consumer-groups urged CPSC to consider pending updates to F2057, which addressed CPSC's criticisms of the 2019 version. A96.

CPSC's testing regime also raised red flags. By incorporating several extremely precise measurements—rather than relying on ASTM's simpler pass-fail method—CPSC's tests introduced unacceptable variability. A79; Canada cmt. 2. Further, CPSC's crucial tip-over study did not mirror real-world tip-over risk, but instead guided children into "specific interactions" meant to exert "maximum impact and force[]" on apparatuses far different from actual units. A88. Commenters could not offer additional input without missing study data. *See, e.g.*, A89, A102-05.

Industry participants also informed CPSC that its predicted compliance costs were far too low. Petitioner AHFA estimated overall costs could reach over $2 billion—more than eight times higher than CPSC estimates. A135. Other industry predictions were in accord. RILA cmt. 5 ($67 per unit); Quebec FMA cmt. 2 (30-40% manufacturing-cost increase); Lexington cmt. 4-5 (similar). Such costs would put "many" small retailers and manufacturers "out of business." Small Bus. Ass'n cmt. 3. Meanwhile, cost-conscious buyers could be relegated to the unregulated secondhand market. A126-27. Nor would the hangtags help consumers given that no marketable unit would score more than a 2-of-5 on CPSC's stability scale. A127; Canada cmt. 2

Finally, industry dismissed the possibility of remaking the clothing-storage unit market in 180-days—let alone 30 days.  A87.

### D.     CPSC's Final Rule

On November 25, 2022, CPSC published the final rule.  A1.  CPSC in some places acted on commenters' feedback, for instance by altering certain steps in the required stability tests, declining to apply the effective date to already-manufactured imports, and recognizing that 30 days was an "unrealistic" timeframe to redesign, rebuild, and replace most products in a $7 billion industry.  A61.

Yet the key problem with CPSC's stability tests—that they carried too much potential for variation—remained.  CPSC also rejected any role for the voluntary ASTM standard.

The Final Rule also injected changes that CPSC's proposed rule never floated.  CPSC lowered the number of affected units with scant explanation.  And, after conceding that no commercially viable unit could score more than a 2-of-5 on CPSC's proposed ratings, CPSC swapped its 0-5 hangtag ratings scale with a never-before-aired scale of 1 to "2 or more."  A28, A72.

11

CPSC dismissed concerns about missing data, opining that much of that data was "not relevant" or not "needed beyond what is provided."  FRP at 368.  Commissioner Feldman dissented, flagging that procedural "vulnerabilities" in the Rule warranted supplemental comment.  Statement of Commissioner Peter A. Feldman Expressing Concerns About Legal Foundation of Final Agency Action on CSU Rule (Oct. 19, 2022).  But a 3-1 majority voted to promulgate the Rule.

## LEGAL STANDARD

This Court has authority to review CPSC's Rule, *see* 15 U.S.C. § 2060(a), and venue is proper because petitioners Mississippi Economic Council and Mississippi Manufacturers Association reside and maintain their principal places of business in this Circuit, *id.*  Petitioners have standing to pursue this action on behalf of their members, many of which are directly subject to the Rule's burdensome requirements.  A203, A211, A223.

This Court has discretion to stay CPSC's Rule and effective date pending review.  *See* 15 U.S.C. § 2060(c); *accord* 5 U.S.C. § 705.  Whether to grant a stay depends on (1) whether petitioners have "made a strong showing" that they are "likely to succeed on the merits"; (2) whether they "will be

irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding"; and (4) "where the public interest lies." *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 610 (5th Cir. 2021) (quotation omitted).

## ARGUMENT

Petitioners satisfy the stay criteria. They have a strong likelihood of succeeding on the merits because the Rule is invalid under the Constitution, the CPSA, and the APA. Staying the Rule pending judicial review would also avert petitioners' impending irreparable harm without prejudicing CPSC or the public interest.

## I.    Petitioners Are Likely to Succeed on the Merits

### A.    The Rule Is Void Because the CPSC Is Unconstitutionally Structured

If "an agency does important work," Article II of the Constitution requires its leaders to be removable by the President—no matter the agency's "size or role." *Collins v. Yellen*, 141 S. Ct. 1761, 1784 (2021). CPSC commissioners here claim extraordinary power to remake a $7 billion industry, yet the President can remove commissioners only for cause. 15 U.S.C. § 2053(a). As the U.S. District Court for the Eastern District of Texas recently

13

explained, CPSC's independent structure is thus unconstitutional. *Consumers' Rsch. v. CPSC*, 592 F. Supp. 3d 568, 573 (E.D. Tex. 2022), *appeal docketed*, No. 22-40328 (5th Cir. May 18, 2022).

This structural defect renders the Rule invalid and bars CPSC's ongoing implementation and enforcement efforts. *See id.* at 587 (citing *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513 (2010)). Petitioners warrant a stay on this basis alone, after which this Court could hold the case in abeyance pending resolution of *Consumers' Research*.

## B.    The Rule Violates the CPSA

To finalize a rule, CPSC must make several findings "supported by substantial evidence on the record taken as a whole." 15 U.S.C. § 2060(c). This CPSA directive requires a "harder look" than the APA's "'arbitrary and capricious standard' would allow," and requires CPSC to address all relevant evidence and data that contradict its position. *Aqua Slide 'N' Dive Corp. v. CPSC*, 569 F.2d 831, 837 (5th Cir. 1978). Courts must assess the reliability of CPSC's evidence, discounting "data and views in the record" that were not "exposed to public comment." *Id.* at 838, 842. CPSC's Rule does not withstand this scrutiny.

14

### 1. The Rule's Requirements Are Not Reasonably Necessary to Address Relevant Risks

CPSC's standards must be "reasonably necessary" to address "an unreasonable risk." 15 U.S.C. § 2058(f)(3)(A). CPSC thus "bear[s] the burden of demonstrating the existence" of a "real, and not a speculative, risk." *Southland Mower Co. v. CPSC*, 619 F.2d 499, 510 (5th Cir. 1980) (quotation omitted). As for reasonableness, CPSC must show that "the severity of the injury that may result from the product, factored by the likelihood of the injury, offsets the harm the regulation itself imposes upon manufacturers and consumers." *Aqua Slide*, 569 F.2d at 839 (quotation omitted). The Rule flunks these standards.

a. <u>Stability Requirements</u>. CPSC's tip-over minimum bears little relation to relevant real-world risk. That is by design. To generate the tip-over requirements, CPSC commissioned a study purporting to examine how hard children typically pull clothing-storage units. A15. But researchers used an apparatus that vastly differed from a real clothing-storage unit. For instance, the testing apparatus's handholds extended beyond the reach of normal drawers, thereby letting children pull stronger than a real unit would. A102-03. Testers also instructed children to do a "[s]uper jump" and "[p]ull as

15

hard as you can," while emphasizing "rocketing up" the apparatus—prompting atypically high force.  PRP at 915-16; A101.

Because CPSC crafted its standard to withstand wildly unrepresentative conditions, CPSC regulated more broadly than reasonably necessary to guard against real-world risk.  CPSC's study concedes as much, stating that it aimed to observe children's "*possible* interactions" and "maximum forces."  PRP at 833.  CPSC's Rule likewise seeks to account for "worst-case conditions."  *E.g.*, A38.  But the statute permits CPSC to regulate "unreasonable risk," not "mere possibility" of risk.  15 U.S.C. § 2058(f)(3)(A); *Zen Magnets, LLC v. CPSC*, 841 F.3d 1141, 1151-52 (10th Cir. 2016).  CPSC failed this requirement by declining to put forward any meaningful data about how often these worst-case scenarios occur.

b.    <u>Scope of Covered Products</u>.    CPSC's risk analysis flagged bedroom use and horizontal drawers as heightening tip-over risks.  87 Fed. Reg. at 6251, 6272.  Yet the Rule's blunderbuss approach subjects all products with particular dimensions to the rule, A2, forcing industry to redesign even products for other rooms, with other storage features.  Dining-room storage and "file cabinets" apparently may qualify, A25, as will all armoires or

16

wardrobes (which each comprise around 1% of reported tip-over harms), A3-4. CPSC states it is "plausible" or "possible" such products might lead to tip-over injury. FRP at 311. Broadly regulating based on "mere possibility" of risk is precisely what the reasonably-necessary and least-restrictive-means requirements prohibit. *Zen Magnets*, 841 F.3d at 1151-52.

  c. <u>Hangtag Requirements</u>. CPSC's hangtag ratings scheme will confuse and mislead consumers, not educate them. *See Aqua Slide*, 569 F.2d at 841-42. *First*, CPSC's ratings rest on tiny decimal differences, even though a CPSC study showed decimals confuse consumers. 87 Fed. Reg. at 6283. *Second*, CPSC's ratings rest on complex terms—like "threshold rotational forces" and "ratio of tip-over moment," A71—even though CPSC noted simple disclosures work best. This jargon also distinguishes CPSC's hangtags from other schemes—like EnergyGuide ratings—that present straightforward concepts, like money saved. A48, A84. *Third*, CPSC's range of 1 to "2 or more" misleadingly implies that lower-rated units are unsafe, when they will perform the same as higher-rated units in virtually any real-world scenario. A219. Adding "or more" to the top-end rating also falsely suggests that some category of "safer" exists. Where, or how much safer, is anyone's guess.

d.  <u>Effective Date</u>.  The Rule's 180-day effective date is grossly inadequate given unprecedented shipping delays, supply-chain pressures, and limited third-party testing capacity.  *See* A204, A219-21, A224.  CPSC dismissed these challenges because "delaying the effective date would delay the safety benefits of the rule."  A54.  Yet CPSC staff acknowledged that, because turnover of covered products would occur over several years, delaying the Rule by months would not meaningfully reduce its purported benefits.  FRP at 235.  That admission forecloses any argument that risk reduction necessitates a burdensome compliance scramble.

## 2.  The Rule Impermissibly Disregards the Less-Burdensome ASTM Standards

Before issuing a final rule, CPSC must address any voluntary standards and explain why its rule is the "least burdensome" option that will "adequately reduce[] the risk of injury."  *See* 15 U.S.C. § 2058(f)(3)(D), (F).  Here, industry has long relied on the voluntary ASTM F2057 standard to address product stability.  CPSC concedes that F2057 is generally less burdensome than the Rule's testing regime, and that current compliance with F2057 is over 90%.  FRP at 271-72; A10.  And CPSC failed to demonstrate that either the existing

18

or updated version of F2057 would not "adequately reduce" risk as compared to CPSC's requirements.

Using its complex tip-over formula, CPSC predicted F2057 would stop only a proportion of the injuries CPSC's new test would. A53-54. But "known and significant … trend[s] in the data" refute CPSC's theory. *Zen Magnets*, 841 F.3d at 1149. Among the data CPSC newly (and improperly, *see infra* p. 24-26) disclosed in the Final Rule, only 2 of 95 cited fatalities involved a unit that met F2057. A9. ASTM-compliant units featured in only 14% (50/361) of non-fatal tip-overs involving children, A9—a share in line with CPSC's standard, which would not prevent injury in 16% of cases, FRP at 244-45.

Indeed, CPSC now agrees that there's been a steady decline in tip-over incidents involving children since around 2014, when industry strengthened F2057. A25. This evidence more than "detract[s] from" CPSC's prediction that F2057 would not adequately reduce risk. *Aqua Slide*, 569 F.2d at 838. That evidence also reinforces how little CPSC's tip-over formulae reflect real-world scenarios. *Supra* pp. 15-16.

CPSC's treatment of the pending F2057 update was even shoddier. That revision addresses CPSC's critiques of the current standard by (1) increasing

19

the tested weight from 50 to 60 pounds, (2) accounting for carpeted surfaces, and (3) simulating clothing-filled drawers.  A9; A208; FRP at 173-74.  Rather than grapple with these new requirements, CPSC cursorily rejects them as inadequate based on its "preliminary assessment."  FRP at 271.  Absent is any discussion of data or testing comparing the revamped ASTM standard with CPSC's.

If CPSC's "conclusory statement" sufficed to reject F2057, the Act's voluntary-standards and least-burdensome-means requirement would be a dead letter.  *Zen Magnets*, 841 F.3d at 1150.  CPSC needed "reliable evidence" vetted through public comment.  *Southland Mower*, 619 F.2d at 510; *Aqua Slide*, 569 F.2d at 842.  At a minimum, this Court should vacate the Rule so petitioners can present CPSC with additional data on the new updates.  *Cf.* 15 U.S.C. § 2060(b).

### 3.    The Rule's Benefits Do Not Reasonably Relate to Its Massive Costs to Industry and Consumers

CPSC also failed to demonstrate that the Rule's benefits "bear a reasonable relationship to its costs."  *Id.* § 2058(f)(3)(E).

a.    <u>Costs</u>.    CPSC's cost projections must consider industry's compliance burdens.  *Id.* § 2058(f)(1).  Relevant costs also include those

consumers experience through increased product pricing or decreased product availability. *Id.* CPSC's Rule vastly underestimated these costs.

The Rule affects units based on their dimensions and storage capacity, regardless whether they qualify as bedroom furniture. *Supra* pp. 16-17. Yet CPSC only examined sales of "bedroom furniture" when estimating the number of affected units. FRP at 236.

Beyond that, CPSC's projected range of $10.21-$17.64 in per-unit costs defies industry's uniform projections. A52. Commenters' testing demonstrated that CPSC-mandated modifications will cost many multiples more. A135. CPSC sidestepped these higher estimates as assuming that compliance would increase product weight. A57; FRP at 348-49. But that response flies in the face of CPSC's own testing, which showed most options (16/22) to make sample units compliant required counterweight, with nearly half (10/22) requiring the addition of at least 20 pounds. FRP at 260 n.81. CPSC never even tried to account for other costs that manufacturers must shoulder—like warehousing and transporting new parts, eliminating product lines, and turning over non-compliant units. *See, e.g.*, FRP at 249 n.57; A212.

CPSC's failure to reasonably assess manufacturers' costs infected its analysis of retailer and consumer harm. CPSC ignored the extent to which the Rule's costs will require retailers to raise prices, forcing many out of a low-cost market space. A214. CPSC also overlooked other retailer costs, like training employees regarding new hangtag requirements. A205. These changes present serious threats of small-retailer shutdowns, thus decreasing consumers' access to safe lower-cost products. That result is directly at odds with CPSC's safety goal.

CPSC responds that the Rule is not to blame for large retail-price increases. FRP at 362. That contradicts CPSC's recognition that it is "typical for retail prices to be a multiple of wholesale cost," or else expects small retailers and others to cover the Rule's hefty price tag. FRP at 349. As for consumer access, CPSC asserted that a maker of low-cost units stood ready to comply and fill any holes in the lower-end market. FRP at 362. That entity rejected CPSC's characterization as "not accurate." Ikea Ltr. to CPSC (Oct. 19, 2022), https://tinyurl.com/2xcb2v3n.

b. <u>Benefits</u>. CPSC inflated the Rule's sole tip-over-reduction benefits. Take CPSC's assessment of adult injuries. CPSC acknowledged that

"nearly all" adults weigh more than the 51.2-pound weight the Rule targets. FRP at 244.  Still, CPSC assumed that the Rule would prevent 42% of all adult tip-over incidents—meaning the Rule would protect adults nearly as well as "children aged 4 to 8," and better than "children aged 9 to 17."  A185. Removing just this implausible adult-injury figure turns the Rule into a net negative.

### C.    The Rule Violates the APA

#### 1.    The Rule Is Arbitrary and Capricious

The APA's arbitrary-and-capricious standard requires agency decision-making to be "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021).  Agency analysis cannot "run[] counter to the evidence before the agency," must show a "rational connection between the facts found and the choice made," and must consider all "important aspect[s] of the problem." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation omitted).

CPSC's Rule violates those precepts.  Take CPSC's approach to estimating risk.  CPSC sometimes cites data that includes television-related harms, and sometimes excludes it because heavier televisions are phasing out.

23

A3-4 & n.21.  Or consider CPSC's approach to testing.  CPSC acknowledged uniformity as a key goal, A41, yet adopted a testing formula that produced results varying up to 30%, A162, A210.  Likewise, CPSC's discussion of covered units in the final cost-benefit analysis unveiled a never-before-seen projection of 17.68 million units for 2023.  A52.  CPSC asserts that higher 2021 sales were aberrant due to COVID-19 recovery, and that 2023 sales would track earlier years.  A52 n.139.  But earlier years' estimates were higher than its 2021 figures, not lower.  *See* 87 Fed. Reg. at 6248.

## 2. **The Rule Is Procedurally Invalid**

Agencies must ensure any change from proposed to final rule is one parties "should have anticipated."  *Tex. Ass'n of Mfrs. v. CPSC*, 989 F.3d 368, 381 (5th Cir. 2021) (quotation omitted); *see* 5 U.S.C. § 553(b)(3).  But as Commissioner Feldman noted in dissent, CPSC defied this "logical outgrowth" safeguard in "obvious" ways.  *Commission Meeting: Decisional Matter*, at 4:53 (Oct. 19, 2022), https://tinyurl.com/437fztre.  Among other changes, CPSC altered its cost-benefits inputs.  *Supra* p. 11.  It relied on new tip-over harm data.  *Supra* p. 19; *see also* Feldman Statement, *supra*, at 12.  And it offered a new hangtag scale of 1 to "2 or more."  *See supra* pp. 11-12.

Debuting these important changes in the Final Rule denied meaningful commenter input, as this motion and the declarations confirm.

Agencies also must disclose key data underpinning their analyses. *Chem. Mfrs. Ass'n v. EPA*, 870 F.2d 177, 200 (5th Cir. 1989) (per curiam). But CPSC declined to release several pieces of relevant rulemaking information. *E.g.*, A85, A89, A102-04, A138-39; *accord* PRP at 871. CPSC opined that the missing data either were not "needed beyond what is provided in the report" or "not relevant." FRP at 368. AHFA's scientific specialists disagreed, stating they needed such data to fully vet CPSC's conclusions. *E.g.*, A103, A180-82.

Denying AHFA and others the chance to fully bring their expertise to bear is emblematic of CPSC's flawed process, and alone supports invalidating the Rule. In the alternative, CPSC's belated analysis warrants vacating the Rule and permitting petitioners to adduce responsive "data, views, [and] arguments" on remand. 15 U.S.C. § 2060(b). Either way, the Rule's compliance period should be halted.

## II.     Petitioners Face Irreparable Harm Absent a Stay

1.     Cases involving compliance with later-invalidated agency action "almost *always* produce[] the irreparable harm of nonrecoverable compliance

25

costs." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) (quotation omitted). Here, CPSC's sovereign immunity guarantees petitioners will not recover sums spent complying with the Rule. *Cf. Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021). And those sums are significant: Petitioners' manufacturer members must replace virtually every unit in a $7 billion market, with some projecting cost increases of over 40% just to reengineer and rebuild units. A213-14. The Rule will inflict significant financial harm on distributors and retailers, too. A204-05, A217-19. Many small businesses face the prospect of closing due to increased cost. A214; Small Bus. Ass'n cmt. 3.

CPSC's Rule imposes severe non-financial harms as well, including lost consumer goodwill and the need to divert valuable employee time and resources away from innovation. A219. These quintessential irreparable harms likewise warrant a stay.[4]

---

[4] Asking CPSC to stay the Rule pending judicial review would have been impracticable given the Rule's immediate, disruptive effect. *Cf.* Fed. R. App. P. 18(2)(A)(i); *Wages & White Lion*, 16 F.4th at 1135 n.1. Such requests can linger for months. *E.g.*, Mot. for Stay 3, *Zen Magnets*, 841 F.3d 1141. A stay request to CPSC also would have been futile: The Commission majority eschewed Commissioner Feldman's request and public pleas for supplemental comment. RILA Ltr. to CPSC (Oct. 22, 2022), https://tinyurl.com/3cr39vbz.

## III. A Stay Will Not Harm CPSC and Serves the Public Interest

Staying the Rule pending judicial review will not harm CPSC or the public interest.  CPSC staff recognized that because "most noncompliant CSUs will take years to cycle out of use," "postponing" the Rule's effective date "by several months would reduce the benefits of the rule by only a very small amount."  FRP at 235.

Meanwhile, the public interest supports a stay.  The voluntary ASTM standard has reduced tip-over incidents. *Supra* p. 7. Yet CPSC's Rule saddles industry with overhauling nearly the entire clothing-storage-unit market, risking skyrocketing costs for consumers.  A216.

Regardless, because Congress "has not given [the Commission] the power to regulate" in the Rule's unlawful manner, it is not courts' role to "weigh [the] tradeoffs" of the Rule's pursuit of desirable ends. *Nat'l Fed'n of Indep. Bus. v. OSHA*, 142 S. Ct. 661, 666 (2022) (per curiam); *accord Wages & White Lion*, 16 F.4th at 1143.  By contrast, the public benefits by "having governmental agencies abide by the federal laws that govern their existence and operations"—particularly before upending the marketplace. *Texas v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021) (per curiam) (quotation omitted).

27

## IV.  At a Minimum, Expedited Consideration Is Warranted

Pursuant to Federal Rules of Appellate Procedure 2, 17, and 27 and Fifth Circuit Rule 27.5, petitioners respectfully request expedited consideration of the petition.  Good cause for expedited review exists because CPSC's Rule irreparably harms Petitioners.  CPSC has indicated it does not oppose expedited review as follows:

| | |
|---|---|
| File Administrative Record: | January 13, 2023 |
| Opening Brief: | January 23, 2023 |
| Respondent's Brief: | February 22, 2023 |
| Reply: | March 6, 2023 |
| Oral Argument: | At the earliest opportunity |

## CONCLUSION

For the foregoing reasons, this Court should stay CPSC's Final Rule pending judicial review, or at a minimum expedite review.

Dated: December 12, 2022          Respectfully submitted,

_/s/ Whitney D. Hermandorfer_____

SARAH M. HARRIS
WHITNEY D. HERMANDORFER*

28

MARK S. STORSLEE
CLAYTON P. PHILLIPS
WILLIAMS & CONNOLLY LLP
 *680 Maine Avenue SW*
 *Washington, DC 20024*
 *(202) 434-5000*
 *whermandorfer@wc.com*
*Counsel for Petitioners*
*Counsel of Record.

29

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

1.     This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Fed. R. App. P. 27(d)(2), this document contains 5,167 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Expanded BT, size 14.

*/s/ Whitney D. Hermandorfer*

*Attorney for Petitioners*

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that counsel for Petitioners Whitney D. Hermandorfer conferred with CPSC Counsel Courtney L. Dixon on December 9-10, 2022, who indicated that CPSC i) opposed Petitioners' motion for a stay and ii) consented to Petitioners' request and proposed schedule for expedited consideration.

*/s/ Whitney D. Hermandorfer*

*Attorney for Petitioners*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rules of Appellate Procedure 15(c) and 25(d) and Fifth Circuit Rule 25.2, I hereby certify that on December 12, 2022, true and correct copies of the foregoing **EMERGENCY MOTION FOR A STAY PENDING REVIEW AND FOR EXPEDITED CONSIDERATION** were filed with the Clerk's Office for the United States Court of Appeals for the Fifth Circuit using the CM/ECF system.


_____ */s/ Whitney D. Hermandorfer*

*Attorney for Petitioners*