No. 22-60639

# In the United States Court of Appeals for the Fifth Circuit

---

AMERICAN HOME FURNISHINGS ALLIANCE,
MISSISSIPPI ECONOMIC COUNCIL, AND
MISSISSIPPI MANUFACTURERS ASSOCIATION
PETITIONERS,

*v.*

UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION,
RESPONDENT.

---

*ON PETITION FOR REVIEW OF A FINAL RULE OF THE UNITED STATES
CONSUMER PRODUCT SAFETY COMMISSION*

---

**MOTION FOR RECONSIDERATION**

---

SARAH M. HARRIS
WHITNEY D. HERMANDORFER*
MARK S. STORSLEE
CLAYTON P. PHILLIPS
LIBBY A. BAIRD
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue SW*
  *Washington, DC 20024*
  *(202) 434-5000*
  *whermandorfer@wc.com*
  *Counsel for Petitioners*
  *Counsel of Record.

# **TABLE OF CONTENTS**

Page

INTRODUCTION ....................................................................................1

BACKGROUND......................................................................................2

ARGUMENT ..........................................................................................6

I.    The Enactment of STURDY and Imminent Publication of ASTM
F2057-23 Support Staying the Rule Pending Review..............................7

II.   The Enactment of STURDY and Imminent Publication of ASTM
F2057-23 Support Expedited Consideration...........................................11

CONCLUSION......................................................................................12

i

# <u>TABLE OF AUTHORITIES</u>

Page

## CASES

*Banister v. Davis*, 140 S. Ct. 1698 (2020) ................................................6

*Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358 (1978) ..................................11

*Giglio v. CPSC*, 575 F.2d 1 (1st Cir. 1978) ..........................................10

*INS v. Orlando Ventura*, 537 U.S. 12 (2002) ...........................................9

## STATUTES, REGULATIONS, AND RULES

5 U.S.C. § 553 ...........................................................................4

15 U.S.C. § 2060 .................................................................5, 8, 9

Consolidated Appropriations Act, 2023, Pub. L. No. 117-328 (2022)................3

87 Fed. Reg. 72,598 (Nov. 25, 2022) ......................................................3

Federal Rule of Appellate Procedure 27 ..............................................1

Fifth Circuit Rules 27.1-.2..............................................................1

STURDY Act, H.R. 2617, 117th Cong. Div. BB. Tit. II, § 201 (2022) .... *passim*

## OTHER AUTHORITIES

Statement of Commissioner Peter A. Feldman Expressing Concerns
About Legal Foundation of Final Agency Action on CSU Rule
(Oct. 19, 2022) ...........................................................................3

STURDY Act Joint Letter of Support to United States Senate,
(Sept. 21, 2022), https://tinyurl.com/2mjnn6cs ............................................3, 6

Unpublished Order, No. 22-60639 (5th Cir. Dec. 28, 2022).................................1

The White House, *The Executive Branch*, https://tinyurl.com/2p8ypjhn ......10

## INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 27(b) and Fifth Circuit Rules 27.1-.2, petitioners American Home Furnishings Alliance (AHFA), Mississippi Economic Council, and Mississippi Manufacturers Association (petitioners) seek reconsideration of this Court's December 28, 2022 Order (1) carrying petitioners' opposed motion for a stay pending review with the case, and (2) denying petitioners' unopposed motion to expedite the proceeding. *See* Unpublished Order, No. 22-60639 (5th Cir. Dec. 28, 2022) (per curiam) (Stewart, Dennis, Willett, JJ.).

Petitioners sought stay relief to stave off staggering, unrecoverable compliance costs their members are now suffering.  Yet in issuing its December 28 Order, the panel lacked the opportunity to consider two recent events that strongly support immediate intervention. *First*, on December 29, 2022, President Biden signed STURDY into law.  STURDY directs CPSC to promulgate a new clothing-storage-unit standard, using new procedural and substantive criteria.  *Second*, ASTM International last week commenced the process to finalize and publish revisions to ASTM F2057, industry's voluntary stability standard, by February 2023.  Together, these developments mean CPSC must replace its Rule with a new, STURDY-required standard; the

law's timelines mean CPSC's new standard could come as early as this May, and no later than this December.

As highlighted in petitioners' stay reply brief, timely filed one day after the December 28 Order, both intervening events bolster petitioners' challenge to the Rule. Reply 1-4. These events also exacerbate petitioners' ongoing, irreparable harm by injecting competing compliance confusion into petitioners' costly race to satisfy the Rule by May 2023. Finally, these events obliterate CPSC's public-interest justification for requiring imminent compliance with a soon-to-be-obsolete Rule. Petitioners now move for reconsideration so the panel may assess these developments, which further support granting petitioners a stay and expedited consideration.

## BACKGROUND

1.    For years, furniture-industry representatives like AHFA, parent-groups, and consumer advocates have together pushed for legislation that addresses clothing-storage-unit stability. Mot. 7-8. Their efforts culminated in a bill known as STURDY, which would require CPSC to establish a stability standard for clothing-storage units using new procedural and substantive criteria. *See* Ex. A.

STURDY garnered broad support.  In September 2022, a coalition including child-advocacy groups, Consumer Reports, and AHFA penned a letter expressing "collective support" for STURDY.  *See* STURDY Act Joint Letter of Support to United States Senate (Sept. 21, 2022), https://tinyurl.com/2mjnn6cs (Joint Letter).  A unanimous Senate passed STURDY a few days later, sending the bill to the House.

Shortly after STURDY's Senate passage, CPSC Commissioner Feldman asked his fellow commissioners to defer adopting the Final Rule and instead allow Congress's efforts to play out.  Statement of Commissioner Peter A. Feldman Expressing Concerns About Legal Foundation of Final Agency Action on CSU Rule (Oct. 19, 2022).  His colleagues disagreed, voting 3-1 to finalize the Rule with a 180-day effective date.  The Final Rule was promulgated on November 25, 2022, and takes effect May 24, 2023.  87 Fed. Reg. 72,598 (Nov. 25, 2022).

Yet Congress continued its consideration of STURDY.  On December 22, 2022, the Senate re-passed STURDY as part of the omnibus appropriations package; the House did the same the next day.  Consolidated Appropriations

Act, 2023, Pub. L. No. 117-328 (2022).  President Biden signed STURDY into law on December 29, 2022.

As enacted, STURDY sets new requirements CPSC must follow:

- ***Product Standards.***  STURDY mandates that any clothing-storage-unit standard use: "tests that simulate the weight of children up to 60 pounds"; "objective, repeatable, reproducible, and measurable tests or series of tests that simulate real-world use and account for" carpet, filled drawers, multiple open drawers, and dynamic force; "testing of all clothing storage units," including those 27 inches and taller; and warning requirements.  § 201(c)(1)-(2).

- ***Voluntary Industry Standards.***  STURDY provides that CPSC "shall—in consultation with" specified interested parties—consider whether "a voluntary standard exists that meets" STURDY's requirements.  § 201(c)(1)(A), (d)(1).  If such voluntary standard meets the Act's stability criteria, "protects children up to 72 months" old, is "published not later than 60 days after" STURDY's enactment, and is "developed by ASTM International" or a similar organization, CPSC must "promulgate a final consumer product safety standard" adopting the voluntary standard within 90 days.  § 201(d)(1)-(2).

- ***Notice-and-Comment Rulemaking.***  STURDY requires CPSC to promulgate a clothing-storage-unit standard that meets the Act's criteria "not later than 1 year after" STURDY's enactment (*i.e.*, December 2023).  § 201(c)(1)-(2).  Any new standard must be promulgated under the notice-and-comment rulemaking provisions of the APA.  § 201(c)(1)(B), (d)(1) (citing 5 U.S.C. § 553).

Together, STURDY's requirements mean CPSC either must (i) adopt a qualifying voluntary standard—*i.e.*, ASTM F2057-23, or (ii) promulgate a new rule that satisfies STURDY's new criteria.  CPSC must complete these steps

4

no later than December 2023—and begin them far sooner.  CPSC's Final Rule will thus govern only briefly after taking effect in May 2023.[1]

2.    Throughout the CPSA, Congress referenced the role of voluntary industry standards in promoting product safety.  Mot. 5, 18.  To mitigate risk of furniture tip-over, industry has adopted and repeatedly strengthened a voluntary stability standard known as ASTM F2057.  Mot. 18.  The current version, ASTM F2057-19, reflects stringent changes made a decade ago.  CPSC agrees that, since around the time of those changes, there has been a "statistically significant decline" in tip-over incidents.  Reply 7 (quoting A25).

In 2021-2022, as CPSC was considering whether to promulgate a new clothing-storage-unit standard, ASTM was developing yet another update to F2057's stability requirements.  Mot. 7.  The relevant subcommittee voted to move forward with key changes to F2057 in September 2022.  Ex. B, at 2.

---

[1]  Counsel for petitioners conferred with opposing counsel regarding whether CPSC, in light of STURDY, would consent to (a) staying the Rule's effective date and holding this case in abeyance, or (b) vacatur and remand of the Rule under 15 U.S.C. § 2060(b).  CPSC withheld its consent.

Separately, AHFA has sought CPSC's guidance on how the agency intends to implement STURDY's requirements, and asked CPSC to withdraw or pause compliance with the Rule.  *See* Ex. C.  Petitioners will promptly inform the Court of any relevant CPSC response.

Following petitioners' stay motion, the revisions to F2057, known as ASTM F2057-23, entered ASTM's final publication process. F2057-23 is now before the ASTM Committee on Standards; it is expected to be approved on February 1, 2023, and published by mid-February. *Id.* Among other things, ASTM F2057-23 will (1) increase the stability test weight from 50 to 60 pounds, (2) account for carpeted surfaces, and (3) simulate clothing-filled drawers and horizonal dynamic force. *Id.* at 1; *see* Mot. 20. Because each feature tracks one of STURDY's stability criterion, it is "anticipate[d]" that ASTM F2057-23 "will meet requirements specified" by STURDY. Joint Letter 1.

## ARGUMENT

STURDY and the finalization of ASTM F2057-23 support petitioners' entitlement to a stay and expedited proceedings. Yet the timing of this Court's December 28 Order—which carried petitioners' stay motion with the case and denied expedited review—precluded full consideration of these events. Petitioners respectfully request that the Court reconsider its order in light of these pivotal "intervening" developments. *Cf. Banister v. Davis*, 140 S. Ct. 1698, 1703 n.2 (2020) (quotation omitted).

## I.    The Enactment of STURDY and Imminent Publication of ASTM F2057-23 Support Staying the Rule Pending Review

STURDY and the revisions to F2057 upend the Final Rule's stability regime.  The Rule impermissibly rejected consideration of ASTM F2057-23; STURDY requires CPSC to reconsider whether to adopt F2057-23 as its own standard.  The Rule employed a complex testing method producing highly variable results; STURDY mandates testing methods that are "objective, repeatable, [and] reproducible."    STURDY § 201(c)(2)(B).    The Rule drastically underestimated the costs of complying by May 2023; STURDY's sunsetting of the Rule guts CPSC's justification for this rushed timeline.  Each development strengthens petitioners' entitlement to a stay.

*Likelihood of Success*.  STURDY and the finalization of ASTM F2057-23 further support vacating the Final Rule.  That Congress saw need to pass STURDY in the wake of the Final Rule underscores the flaws in CPSC's approach.  Take, for instance, CPSC's cursory treatment of F2057-23, which the agency dismissed based only on a "preliminary assessment."  Mot. 20 (quotation omitted).  STURDY reiterates Congress's preference to enforce industry standards by requiring CPSC to thoroughly reassess F2057-23's adequacy with input from stakeholders.  Reply 1, 3; *supra* p. 4.

7

Or consider CPSC's projection of the Rule's costs and benefits. On the cost side, CPSC nowhere accounts for the expenses industry must undertake in preparing to comply with a forthcoming standard under STURDY. On the benefits side, CPSC's future-injury projection depends on the Rule remaining in place for years, not soon phasing out as STURDY requires. Both omissions only worsen CPSC's unreasonable cost-benefit assessment. Mot. 20-23.

These compliance challenges also further rebut CPSC's defense of the Rule's May 2023 effective date. Mot. 18. Nowhere did CPSC account for industry's need to concurrently study, plan for, and address whatever new standard CPSC might promulgate under STURDY's distinct procedures and requirements. To be clear, the problem is not STURDY—which petitioners applaud. It is CPSC's refusal to heed Congress's intervention and instead press compliance with a Rule that CPSC must soon replace.

At a minimum, the adoption of STURDY and ASTM F2057-23 plainly qualify as "material" developments about which petitioners can present "additional data, views, or arguments" that they could not have presented before. 15 U.S.C. § 2060(b); Mot. 20; Reply 4. By permitting agency resolution of intervening issues like these, the CPSA promotes "informed" agency

"discussion and analysis" and the efficient use of judicial resources. *Cf. INS v. Orlando Ventura*, 537 U.S. 12, 16-17 (2002) (per curiam). Those considerations are at an apex here, where petitioners are asking only that CPSC pause to consider issues the agency must address anyway under STURDY.

Petitioners thus are likely to succeed in obtaining vacatur of the Rule, whether outright or pursuant to § 2060(b). Either way, these new developments independently support staying the Rule. Reply 1, 3-4.

*Irreparable Harm.* STURDY's enactment exacerbates the irreparable harm petitioners face. Not only must regulated parties expend hundreds of millions in unrecoverable costs to design, source, build, test, and ship compliant products by the Rule's May 2023 effective date. Mot. 26; Reply 12-13. They now also face additional costs associated with participating in the new rulemaking proceedings and planning compliance with the new standard STURDY requires.

Worse, the immense costs of complying with the Final Rule's compressed timeline will all be for naught. STURDY gives CPSC two choices. CPSC can adopt ASTM F2057-23 as its own rule. This could happen quickly: If CPSC determines that F2057-23 satisfies STURDY following the standard's

9

February 2023 publication, CPSC must adopt F2057-23 as its own rule in 90 days—as early as May 2023. *See* STURDY § 201(d)(1)-(2). Alternatively, CPSC must undertake yet another, different rulemaking to satisfy STURDY's new requirements. This rulemaking also would need to commence soon so CPSC can promulgate a new final rule by December 2023, as STURDY requires. *See id.* § 201(c)(1)-(2). Regardless, regulated businesses must now pour out immense sums to satisfy a regime that will be supplanted shortly. CPSC's ignoring "further expense" to manufacturers who will have already "retooled to comply" with the Rule adds insult to petitioners' irreparable injury. *Giglio v. CPSC*, 575 F.2d 1, 3 (1st Cir. 1978).

<u>*Balance of the Equities and Public Interest*</u>. STURDY forecloses any colorable claim that a stay would harm CPSC. Agencies exist to "enforce[] and administ[er] federal laws," and Congress has just departed from CPSC's chosen approach. The White House, *The Executive Branch*, https://tinyurl.com/2p8ypjhn. Further, CPSC's justification for the Rule—that it would reduce injuries over a span of years—fails now that the Rule's shelf-life is limited. If the Rule's slow phase-in period rendered the effect of delay "small," Mot. 27 (quoting FRP at 235), STURDY has virtually erased it.

Nor does it advance the public's interest to upend "the status quo" by saddling industry and consumers with costly requirements, only to ask industry to undertake yet another compliance endeavor months later. *Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358, 1358-59 (1978); Mot. 26-27. Industry's (not to mention CPSC's) resources are better spent promoting Congress's chosen safety efforts rather than navigating overlapping compliance regimes. And while CPSC earlier claimed its Rule was necessary to protect the public, Congress's different approach shows otherwise.

## II. The Enactment of STURDY and Imminent Publication of ASTM F2057-23 Support Expedited Consideration

For many of the same reasons, petitioners seek reconsideration of the Court's decision to deny their unopposed request for expedited consideration. Mot. 28. Cause for expedited consideration is stronger than ever, now that petitioners face the prospect of costly and confusing compliance with two different CPSC regulations—the Final Rule, and CPSC's new standard under STURDY—within the span of one year. *Supra* pp. 9-11.

## CONCLUSION

For the foregoing reasons, petitioners respectfully request that the Court grant the motion for reconsideration, as well as petitioners' motion for a stay pending review and expedited consideration.

Dated: January 6, 2023

Respectfully submitted,

*/s/ Whitney D. Hermandorfer*

SARAH M. HARRIS
WHITNEY D. HERMANDORFER*
MARK S. STORSLEE
CLAYTON P. PHILLIPS
LIBBY A. BAIRD
WILLIAMS & CONNOLLY LLP
 *680 Maine Avenue SW*
 *Washington, DC 20024*
 *(202) 434-5000*
 *whermandorfer@wc.com*
*Counsel for Petitioners*
*Counsel of Record.

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

1.     This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Fed. R. App. P. 27(d)(2), this document contains 2,131 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Expanded BT, size 14.

*/s/ Whitney D. Hermandorfer*

*Attorney for Petitioners*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rules of Appellate Procedure 15(c) and 25(d) and Fifth Circuit Rule 25.2, I hereby certify that on January 6, 2023, true and correct copies of the foregoing **MOTION FOR RECONSIDERATION** were filed with the Clerk's Office for the United States Court of Appeals for the Fifth Circuit using the CM/ECF system.


                                           */s/ Whitney D. Hermandorfer*

                                             *Attorney for Petitioners*

14

# EXHIBIT A

H. R. 2617—1094

(c) FUNCTIONS.—The manufacturing.gov hub established under subsection (b) shall—

(1) serve as the primary hub for information relating to every Federal manufacturing program, including the programs identified in the report of the Government Accountability Office entitled "U.S. Manufacturing" (GAO 17–240), published on March 28, 2017;

(2) provide the contact information of relevant program offices carrying out the Federal manufacturing programs described in paragraph (1);

(3) provide an avenue for public input and feedback relating to—

(A) the functionality of the website of the Department of Commerce;

(B) the Federal manufacturing programs described in paragraph (1); and

(C) any other manufacturing-related challenges experienced by manufacturers in the United States;

(4) establish web pages within the hub that shall focus on—

(A) technology and research and development;

(B) trade;

(C) workforce development and training;

(D) industrial commons and supply chains; and

(E) small and medium manufacturers; and

(5) use machine learning to—

(A) identify frequently asked questions; and

(B) disseminate to the public answers to the questions identified under subparagraph (A).

(d) NO ADDITIONAL FUNDS.—No additional funds are authorized to be appropriated for the purpose of carrying out this section.

# TITLE II—STURDY

**SEC. 201. CONSUMER PRODUCT SAFETY STANDARD TO PROTECT AGAINST TIP-OVER OF CLOTHING STORAGE UNITS.**

(a) CLOTHING STORAGE UNIT DEFINED.—In this section, the term "clothing storage unit" means any free-standing furniture item manufactured in the United States or imported for use in the United States that is intended for the storage of clothing, typical of bedroom furniture.

(b) CPSC DETERMINATION OF SCOPE.—The Consumer Product Safety Commission shall specify the types of furniture items within the scope of subsection (a) as part of a standard promulgated under this section based on tip-over data as reasonably necessary to protect children up to 72 months of age from injury or death.

(c) CONSUMER PRODUCT SAFETY STANDARD REQUIRED.—

(1) IN GENERAL.—Except as provided in subsection (f)(1), not later than 1 year after the date of the enactment of this Act, the Consumer Product Safety Commission shall—

(A) in consultation with representatives of consumer groups, clothing storage unit manufacturers, craft or hand-made furniture manufacturers, and independent child product engineers and experts, examine and assess the effectiveness of any voluntary consumer product safety standards for clothing storage units; and

H. R. 2617—1095

(B) in accordance with section 553 of title 5, United States Code, and paragraph (2), promulgate a final consumer product safety standard for clothing storage units to protect children from tip-over-related death or injury, that shall take effect 180 days after the date of promulgation or such a later date as the Commission determines appropriate.

(2) REQUIREMENTS.—The standard promulgated under paragraph (1) shall protect children from tip-over-related death or injury with—

(A) tests that simulate the weight of children up to 60 pounds;

(B) objective, repeatable, reproducible, and measurable tests or series of tests that simulate real-world use and account for impacts on clothing storage unit stability that may result from placement on carpeted surfaces, drawers with items in them, multiple open drawers, and dynamic force;

(C) testing of all clothing storage units, including those 27 inches and above in height; and

(D) warning requirements based on ASTM F2057–19, or its successor at the time of enactment, provided that the Consumer Product Safety Commission may strengthen the warning requirements of ASTM F2057–19, or its successor, if reasonably necessary to protect children from tip-over-related death or injury.

(3) TESTING CLARIFICATION.—Tests referred to in paragraph (2)(B) shall allow for the utilization of safety features (excluding tip restraints) to work as intended if the features cannot be overridden by consumers in normal use.

(4) TREATMENT OF STANDARD.—A consumer product safety standard promulgated under paragraph (1) shall be treated as a consumer product safety rule promulgated under section 9 of the Consumer Product Safety Act (15 U.S.C. 2058).

(d) ADOPTION OF VOLUNTARY STANDARD.—

(1) IN GENERAL.—If a voluntary standard exists that meets the requirements of paragraph (2), the Commission shall, not later than 90 days after the date on which such determination is made and in accordance with section 553 of title 5, United States Code, promulgate a final consumer product safety standard that adopts the applicable performance requirements of such voluntary standard related to protecting children from tip-over-related death or injury. A consumer product safety standard promulgated under this subsection shall be treated as a consumer product safety rule promulgated under section 9 of the Consumer Product Safety Act (15 U.S.C. 2058). Such standard shall take effect 120 days after the date of the promulgation of the rule, or such a later date as the Commission determines appropriate. Such standard will supersede any other existing standard for clothing storage units to protect children from tip-over-related death or injury.

(2) REQUIREMENTS.—The requirements of this paragraph with respect to a voluntary standard for clothing storage units are that such standard—

(A) protects children up to 72 months of age from tip-over-related death or injury;

H. R. 2617—1096

(B) meets the requirements described in subsection (c)(2);

(C) is, or will be, published not later than 60 days after the date of enactment of this Act; and

(D) is developed by ASTM International or such other standard development organization that the Commission determines is in compliance with the intent of this section.

(3) NOTICE REQUIRED TO BE PUBLISHED IN THE FEDERAL REGISTER.—The Commission shall publish a notice in the Federal Register upon beginning the promulgation of a rule under this subsection.

(e) REVISION OF VOLUNTARY STANDARD.—

(1) NOTICE TO COMMISSION.—If the performance requirements of a voluntary standard adopted under subsection (d) are subsequently revised, the organization that revised the performance requirements of such standard shall notify the Commission of such revision after final approval.

(2) TREATMENT OF REVISION.—Not later than 90 days after the date on which the Commission is notified of revised performance requirements of a voluntary standard described in paragraph (1) (or such later date as the Commission determines appropriate), the Commission shall determine whether the revised performance requirements meet the requirements of subsection (d)(2)(B), and if so, modify, in accordance with section 553 of title 5, United States Code, the standard promulgated under subsection (d) to include the revised performance requirements that the Commission determines meet such requirements. The modified standard shall take effect after 180 days or such later date as the Commission deems appropriate.

(f) SUBSEQUENT RULEMAKING.—

(1) IN GENERAL.—Beginning 5 years after the date of enactment of this Act, subsequent to the publication of a consumer product safety standard under this section, the Commission may, at any time, initiate rulemaking, in accordance with section 553 of title 5, United States Code, to modify the requirements of such standard or to include additional provisions if the Commission makes a determination that such modifications or additions are reasonably necessary to protect children from tip-over-related death or injury.

(2) PETITION FOR REVISION OF RULE.—

(A) IN GENERAL.—If the Commission receives a petition for a new or revised test that permits incorporated safety features (excluding tip restraints) to work as intended, if the features cannot be overridden by consumers in normal use and provide an equivalent or greater level of safety as the tests developed under subsection (c)(2) or the performance requirements described in subsection (d)(2)(B), as applicable, the Commission shall determine within 120 days—

(i) whether the petition meets the requirements for petitions set forth in section 1051.5 of title 16, Code of Federal Regulations, or any successor regulation implementing section 9(i) of the Consumer Product Safety Act (15 U.S.C. 2058(i)); and

H. R. 2617—1097

(ii) whether the petition demonstrates that the test could reasonably meet the requirements of subsection (c)(2)(B), and if so, the Commission shall determine by recorded vote, within 60 days after the determination, whether to initiate rulemaking, in accordance with section 553 of title 5, United States Code, to revise a consumer product safety standard promulgated under this section to include the new or revised test.

(B) DEMONSTRATION OF COMPLIANCE.—Compliance with the testing requirements of a standard revised under subparagraph (A) may be demonstrated either through the performance of a new or revised test under subparagraph (A) or the performance of the tests otherwise required under a standard promulgated under this section.

(3) TREATMENT OF RULES.—Any rule promulgated under this subsection, including any modification or revision made under this subsection, shall be treated as a consumer product safety rule promulgated under section 9 of the Consumer Product Safety Act (15 U.S.C. 2058).

# TITLE III—INFORM CONSUMERS

**SEC. 301. COLLECTION, VERIFICATION, AND DISCLOSURE OF INFORMATION BY ONLINE MARKETPLACES TO INFORM CONSUMERS.**

(a) COLLECTION AND VERIFICATION OF INFORMATION.—

(1) COLLECTION.—

(A) IN GENERAL.—An online marketplace shall require any high-volume third party seller on such online marketplace's platform to provide, not later than 10 days after qualifying as a high-volume third party seller on the platform, the following information to the online marketplace:

(i) BANK ACCOUNT.—

(I) IN GENERAL.—A bank account number, or, if such seller does not have a bank account, the name of the payee for payments issued by the online marketplace to such seller.

(II) PROVISION OF INFORMATION.—The bank account or payee information required under subclause (I) may be provided by the seller in the following ways:

(aa) To the online marketplace.

(bb) To a payment processor or other third party contracted by the online marketplace to maintain such information, provided that the online marketplace ensures that it can obtain such information within 3 business days from such payment processor or other third party.

(ii) CONTACT INFORMATION.—Contact information for such seller as follows:

(I) With respect to a high-volume third party seller that is an individual, the individual's name.

# EXHIBIT B

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

| | |
|---|---|
| American Home Furnishings Alliance, Mississippi Economic Council, and Mississippi Manufacturers Association,<br><br>       Petitioners,<br><br>v.<br><br>U.S. Consumer Product Safety Commission,<br><br>       Respondent. | Case No. 22-60639 |

## SUPPLEMENTAL DECLARATION OF BILL PERDUE IN SUPPORT OF PETITIONERS' MOTION FOR RECONSIDERATION

I, Bill Perdue, declare and state as follows:

1.     I am currently VP of Regulatory Affairs for the American Home Furnishings Alliance (AHFA). For the past 21 years, I have represented the furniture industry as a voting member of the ASTM F15.42 Furniture Safety Subcommittee, where I have participated in various task groups in developing the ASTM voluntary safety standard for clothing storage units (CSUs). As part of my role at AHFA, I have also participated in developing the forthcoming revisions to ASTM F2057. *See* A208-09. I am aware of the current status of these revisions.

2.     Under the recently revised version of F2057, known as ASTM F2057-23, CSUs will be required to pass three separate pass/fail performance tests involving a simulated clothing load (filled drawers), a test weight of 60 rather than 50 pounds, application of simulated horizontal dynamic force, and simulated carpet with child weight.

3.     The ASTM F15.42 Furniture Safety Subcommittee voted to approve the revisions to F2057-19 in September 2022.  To ensure these revisions would align with the clothing-storage-unit stability criteria contained in pending legislation known as STURDY, AHFA placed an administrative hold on publication of the revisions pending STURDY's enactment.

4.     On Friday, December 23, 2022, Congress passed STURDY.  On Tuesday, December 27, 2022, AHFA withdrew the administrative hold on F2057-23.

5.     The revised F2057 is on the January ASTM Committee on Standards (COS) ballot, with a closing date of January 31st.

6.     Once the ballot closes, if there are no appeals, the revised standard will have a February 1st approval date.

7.     The revised F2057 has gone through task group chairman review/edit and is currently undergoing editing/formatting with the ASTM editorial/style staff.

8.     Once the ballot process is completed and the revisions are approved by the ASTM Committee on Standards, the standard must go through the publication process.  The revised ASTM F2057 is expected to be published by mid-February and will be listed as ASTM F2057-23.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.


EXECUTED this 6th day of January, 2023, in High Point, North Carolina.

_____

Mr. Bill Perdue

# EXHIBIT C



January 4, 2023

*Via email*

**Alexander Hoehn-Saric**
Chairman
U.S. Consumer Product Safety Commission
4330 East-West Highway
Bethesda, MD 20814
Dear Mr. Hoehn-Saric

We write to seek guidance and request CPSC's action in light of significant recent events related to CPSC's regulation of clothing-storage-unit stability. On December 29, 2022, President Biden signed STURDY into law. STURDY, Pub. L. No. 117-328, div. BB, tit. II, sec. 201 (2022). STURDY directs CPSC to promulgate a new consumer-product-safety standard to protect against tip-over of clothing-storage units, and establishes several procedural and substantive requirements CPSC must follow when doing so. STURDY's provisions differ in several ways from CPSC's Final Rule, Safety Standard for Clothing Storage Units ("Final Rule"), which will take effect on May 24, 2023. 87 Fed. Reg. 72,598 (Nov. 25, 2022). Further, and relevant to STURDY's voluntary standards provisions, an update to ASTM F2057 is almost final. This update is expected to be published as ASTM F2057-23 in early February 2023.

Considering these recent developments, it is critical that CPSC provide regulated entities clarity on several issues as soon as is practicable:

1. Subsections (c) and (d) of STURDY provide that CPSC "shall—in consultation with" a host of specific interested parties—consider whether "a voluntary standard exists that meets" STURDY's requirements. If CPSC determines that such a standard exists, CPSC "shall . . . promulgate a final consumer product safety standard" adopting "such voluntary standard."

   A. What is CPSC's position as to whether ASTM F2057-23 satisfies STURDY's voluntary-standard requirements in subsections (c)(2) and (d)(2) and when does CPSC intend to announce this determination?

   B. If CPSC considers ASTM F2057-23 adequate to satisfy STURDY's requirements, does CPSC intend to promulgate a rule adopting ASTM F2057-23's requirements within the statute's 90-day deadline?

   C. If CPSC does not consider ASTM F2057-23 adequate to satisfy the requirements of STURDY, (i) what is the basis for CPSC's conclusion, and (ii) will CPSC

provide the opportunity for interested parties to offer additional arguments, data, and information regarding this position?

2. Subsection (c)(1) of STURDY requires CPSC to promulgate a new safety standard for clothing-storage units, using notice-and-comment rulemaking, "not later than one year after" STURDY's enactment—*i.e.*, December 2023. Subsection (c)(2) then specifies the criteria CPSC's new rule must satisfy.

   A. How does CPSC view STURDY's new procedural and substantive requirements as interacting with CPSC's Final Rule?

   B. Does CPSC intend to undertake a new rulemaking and promulgate a clothing-storage-unit stability standard by December 2023, consistent with these provisions?

   C. If CPSC concludes that STURDY requires a new rulemaking, when does CPSC intend to commence the rulemaking process?

   D. If CPSC concludes that STURDY does not require a new rulemaking, (i) how does CPSC intend to satisfy STURDY's new procedural and substantive requirements, and (ii) will CPSC offer interested parties the opportunity to comment on its position?

3. STURDY directs that, (i) within 90 days of determining that ASTM F2057-23 satisfies the law's requirements, CPSC must promulgate a standard adopting the requirements of ASTM F2057-23, or (ii) no later than December 2023, CPSC must promulgate a new rule governing clothing-storage-unit stability that satisfies the law's requirements.

   A. What is CPSC's position as to whether its expected new rule—either its adoption of F2057-23's requirements or a new standard—will supersede the current Final Rule, which is effective May 24, 2023?

   B. If CPSC agrees that it must promulgate a new standard that will supersede the Final Rule within one year, does CPSC intend to offer guidance to regulated entities about how to prioritize compliance with this forthcoming new standard and the Final Rule?

   C. Does CPSC intend to consider the costs regulated manufacturers, distributors, and retailers will spend preparing compliance with two different regulations in the course of one year in (i) further analysis of the Final Rule's economic impacts or (ii) plans for enforcing the Final Rule's May 24, 2023 effective date?

4. In light of the issues discussed above, would CPSC consider withdrawing the Final Rule to avoid subjecting regulated parties to concurrent compliance obligations? If CPSC will not withdraw the Final Rule, would CPSC consider (i) extending the Final Rule's May 24, 2023, effective date, and (ii) reopening consideration of the Final Rule so that CPSC can receive additional arguments, information, and data regarding the interaction of STURDY's new provisions, the finalization of ASTM F2057-23, and CPSC's Final Rule?

Given the magnitude of our members' compliance obligations and the current lack of clarity regarding CPSC's plans to enforce STURDY, we respectfully request a response to these questions as soon as is practicable and no later than CPSC's January 30, 2023 testing guidance workshop.  We look forward to continuing to work with CPSC to advance our shared goal of promoting clothing-storage-unit safety.

Sincerely,

Bill Perdue
VP Regulatory Affairs
American Home Furnishings Alliance
bperdue@ahfa.us
336-881-1017o

c.c.:    Commissioner Peter Feldman
         Commissioner Mary Boyle
         Commissioner Richard L. Trumka, Jr.
         CPSC Secretary Alberta E. Mills
         CPSC General Counsel Austin Schlick